**FILED**

**FEB - 6 2012**

**JUDGE JAMES B. ZAGEL**
**UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 10 CR 240 |
| vs. ) | Judge James B. Zagel |
| ) | |
| RAJA LAHRASIB KHAN ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant RAJA LAHRASIB KHAN, and his attorneys, THOMAS ANTHONY DURKIN, JANIS D. ROBERTS, and JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.  The indictment in this case charges defendant with two counts of knowingly attempting to provide material support and resources, namely, property (funds) and currency, to a designated foreign terrorist organization, namely, *al Qaeda*, in violation of Title 18, United States Code, Section 2339B(a)(1).

3.  Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with knowingly attempting to provide material support and resources, namely, property (funds) and currency, to a designated foreign terrorist organization, namely, *al Qaeda*, in violation of Title 18, United States Code, Section 2339B(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than on or about March 17, 2010, and continuing until at least March 23, 2010, at Chicago, in the Northern District of Illinois, and elsewhere, defendant, a citizen of the United States, did knowingly attempt to provide material support and resources, namely, property (funds) and currency, as those terms are defined in Title 18, United States Code, Section 2339A(b) and 2339B(g), to a foreign terrorist organization, namely *al Qaeda*, which was designated by the United States Secretary of State as a foreign terrorist organization on October 8, 1999, and redesignated on October 5, 2001, October 2, 2003, and January 22, 2009, knowing that *al Qaeda* had engaged and was engaging in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act), and that *al Qaeda* had engaged and was engaging in terrorism (as defined in Section

140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989); in violation of Title 18, United States Code, Section 2339B(a)(1).

Specifically, on October 8, 1999, the U.S. Secretary of State designated *al Qaeda* as a foreign terrorist organization. The Secretary of State redesignated *al Qaeda* as a foreign terrorist organization on October 5, 2001, October 2, 2003, and January 22, 2009.

Defendant, who became a naturalized U.S. citizen in 1988, was born and resided in the Azad Kashmir region of Pakistan prior to immigrating to the United States in the late 1970's. Although he maintained a permanent residence in the United States, defendant usually traveled to Pakistan annually, for months at a time, to visit with family and tend to other affairs. During one such trip, in or around the early to mid-2000s, defendant was contacted by several individuals seeking monetary donations for Ilyas Kashmiri, who, as defendant knew, was a leader of the Kashmir independence movement and was involved in, among other things, leading, participating in, coordinating, and training others for attacks against the Indian government in an effort to force India out of the portions of the Kashmir region it controlled. Defendant supported Kashmir independence from India. Defendant and the individuals traveled to another location in Pakistan where defendant personally met with Ilyas Kashmiri, who informed defendant that Individual A (discussed below) was collecting funds on Kashmiri's behalf. Defendant was then taken to one of Ilyas Kashmiri's training camps where it appeared that attendees were receiving military-style and other training.

In or around 2008, defendant, who had befriended Individual A, was in Pakistan when Individual A asked whether defendant wished to accompany Individual A to meet with Ilyas

Kashmiri. After defendant agreed, Individual A and defendant traveled to a location within Pakistan where defendant again met personally with Ilyas Kashmiri. At the time of this meeting, defendant knew or had grounds to believe that, in addition to leading attacks against the Indian government in the Kashmir region, Ilyas Kashmiri was working with and providing training to *al Qaeda*. During their meeting, among other things, Ilyas Kashmiri told defendant that Osama Bin Laden was alive, healthy, and giving the orders. Prior to the end of their meeting, defendant provided Kashmiri with approximately 20,000 Pakistani rupees (approximately $200 to $250), which defendant intended Kashmiri to use to support attacks against the Indian government.

On or about November 23, 2009, defendant sent approximately 77,917.91 Pakistani rupees (approximately $930), via Western Union, from Chicago, Illinois, to Individual A, who was located in Pakistan. Defendant then directed by phone Individual A to provide Ilyas Kashmiri with approximately 25,000 Pakistani rupees (approximately $300). Although defendant intended that such funds be used by Ilyas Kashmiri to support military-style and other attacks against the Indian government, defendant was aware or had reason to believe, at the time, that Kashmiri was working with *al Qaeda*. During this and other conversations with Individual A, defendant and Individual A referred to Ilyas Kashmiri by a pseudonym to conceal that they were talking about Kashmiri.

In or around February and March 2010, defendant participated in several meetings with an undercover law enforcement agent (the "UC"), who posed as someone interested in: (1) sending money to Ilyas Kashmiri to purchase weapons and ammunition, only if Kashmiri

was working with *al Qaeda*; and (2) sending individuals into Pakistan to receive military-style and other training so that they could conduct attacks against U.S. forces and interests. During these meetings, among other things, defendant described his prior meetings with Ilyas Kashmiri, confirmed that Kashmiri was working with *al Qaeda*, and agreed to deliver the UC's funds to Ilyas Kashmiri. To do so, defendant proposed that he would either carry the money from the U.S. to Pakistan, or he would have his son or another relative courier the money from the U.S. to the United Kingdom (U.K.), where defendant would rendevous with the courier, retrieve the money, and personally transport it to Pakistan. Under either scenario, defendant would then ensure that the UC's funds were delivered to Ilyas Kashmiri. Defendant also offered that, if the UC or an associate could arrange for individuals to travel to Pakistan, defendant would arrange for such individuals to receive the desired training.

On or about March 17, 2010, the UC provided defendant with $1,000, which defendant agreed to provide to Ilyas Kashmiri. At the time defendant received these funds, it was his intention to personally deliver or arrange for the funds to be delivered to Ilyas Kashmiri, who defendant was aware was working with and supporting *al Qaeda,* in addition to fighting India, and who defendant knew was likely to use the funds to purchase dangerous weapons, firearms, and explosives to be used to conduct violent attacks. Defendant then provided his son, who was traveling from the United States to the U.K., with funds that defendant intended to later retrieve from his son in the U.K. and, subsequently, provide to Ilyas Kashmiri in Pakistan.

5

On or about March 23, 2010, defendant's son arrived at an airport in the U.K. where he was detained and searched by U.K. law enforcement officials. During this search, officials discovered and seized all of the funds in defendant's son's possession, including seven of the ten $100 bills the UC had provided to defendant. After learning of his son's detention, in an effort to terminate his involvement in the scheme to provide funds to Kashmiri, defendant requested an urgent meeting with Individual B, who had been present at defendant's meetings with the UC. Defendant, Individual B, and another individual then met in front of defendant's apartment building. During this meeting, defendant and the other individual demanded to return the UC's funds, and provided $800 to Individual B.

At the time defendant engaged in the conduct set forth above, he knew that *al Qaeda* was an organization that had engaged in terrorist activity around the world.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 15 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of any term of years or life.

    b.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

<h3 style="text-align:center"><u>Sentencing Guidelines Calculations</u></h3>

  9.  Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

  10.  For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a.  **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

    b.  **Offense Level Calculations.**

      i.  The base offense level is 26, pursuant to Guideline § 2M5.3(a).

      ii.  The offense level is increased by 2 levels because the offense and relevant conduct involved defendant's knowledge and reason to believe that the funds he provided would be used to purchase dangerous weapons, firearms, or explosives, or that they would be used to commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1).

    iii. The offense level is increased by 12 levels because the offense of conviction is a felony that involved a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense of conviction: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, Unites States Code, Section 2339B; pursuant to Guideline § 3A1.4(a).

    iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    v. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero. Due to the operation of Guideline § 3A1.4(b), defendant's criminal history category is VI.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 37, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guideline sentence of 180 months' imprisonment, pursuant to Guideline § 5G1.1(a), in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations

– specifically, those set forth above in subparagraphs 10(b) and 10(c) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

## Cooperation

11. Defendant agrees that, at any time prior to the termination of his sentence in this case, including any terms of imprisonment and supervised release, defendant will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding in the United States. Defendant agrees that when directed by the United States Attorney's Office, and with prior notice to his counsel, he will fully and truthfully participate in any debriefings for the purpose of gathering intelligence or national security information.

## Agreements Relating to Sentencing

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart from the low end of the applicable Guideline range, and to impose the specific sentence agreed to by the

parties as outlined below. At the time of the execution of this Plea Agreement, it is the government's express intention to so move. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13. If the government moves the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of between 5 and 8 years, and that each party is free to recommend whatever sentence that is within the agreed upon range that it deems appropriate. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14. If, in its sole discretion, the government determines subsequent to defendant's sentencing in this case that defendant has provided substantial assistance, as described in Fed. R. Crim. P. 35(b)(2), which assistance has not been taken into account by the parties in fashioning the sentencing agreement in this case, and was not taken into account by the Court in imposing sentence, then the government will move for a reduction in his sentence pursuant

to Fed. R. Crim. P. 35(b)(4). Defendant understands that it is solely within the government's discretion whether to move for a reduction in the sentence, and he agrees not to challenge the government's decision if it determines in its discretion that such a motion is not appropriate. Defendant also understands that should the government seek such a reduction as outlined above, it is solely within the Court's discretion to grant or reject such a request, and to determine the extent of any reduction.

15. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $1,000 as compensation for government funds that defendant received during the investigation of the case.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 10 CR 240.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a

jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Plea Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction

and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relate directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligation to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency, for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant.

## Conclusion

27. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the

event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2.6.12

_Victoria J. Peet for PJF_
PATRICK J. FITZGERALD
United States Attorney

_Raja Khan_
RAJA LAHRASIB KHAN
Defendant

_CKV_
CHRISTOPHER K. VEATCH
Assistant U.S. Attorney

_Thomas A. Durkin_
THOMAS A. DURKIN
Attorney for Defendant

_Janis D. Roberts by TAD_
JANIS D. ROBERTS
Attorney for Defendant

_Joshua Herman_
JOSHUA G. HERMAN
Attorney for Defendant